# EXHIBIT A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CAROL M. GORDON,                        )
                                        )
    Plaintiff,                      )
                                        )        No. **08CH04859**
    v.                              )
                                        )
                                        )
ILENE LARSON, JEANNE SHILTS, and GL     )
REHABILITATION SERVICES, LTD., an       )        JURY DEMANDED
Illinois corporation,                   )
                                        )
    Defendants.                     )

### COMPLAINT FOR DECLARATORY AND OTHER RELIEF

NOW COMES the Plaintiff, CAROL M. GORDON, by her attorneys, Hinshaw & Culbertson LLP, and for their complaint herein state as follows, with each Count pled in the alternative of the other Counts as well as cumulatively:

### SUMMARY OF CAUSES OF ACTION

1.    This action seeks a declaration that no money is owed by Plaintiff to Defendants pursuant to a certain Stock Purchase Agreement, whereby Plaintiff sold all of her ownership of GL Rehabilitation Services, Ltd., an Illinois corporation, to the individual Defendants.

2.    This action also seeks damages for breach of express warranties by the Defendants, breach of the Defendants' fiduciary duties as employees of the company prior to closing, and fraud, along with rescission of a purported Release fraudulently obtained by the Defendants at the Closing of the stock sale.

### THE PARTIES AND VENUE

3.    The Plaintiff, CAROL M. GORDON ("Plaintiff" or "Gordon"), resides at 2336 N. Commonwealth, Chicago, Illinois, in Cook County.



EXHIBIT
A
to Plaintiff's
Motion to Remand

6280415v3 885509

4.     Defendants ILENE LARSON ("Larson") and JEANNE SHILTS ("Shilts") are, and have been at all relevant times, residents of the State of Wisconsin.  Larson and Shilts are hereinafter referred to as "the Defendants."

5.     GL Rehabilitation Services, Ltd. ("GL Rehabilitation" or "the Corporation") is a domestic corporation duly organized under the laws of the State of Illinois, with its registered offices, at the time of its sale to Defendants, located at 79 West Washington Street, Suite 1119, Chicago, Illinois, in Cook County.

6.     Gordon, as the sole shareholder and director of GL Rehabilitation, entered into a Stock Purchase Agreement ("the Agreement") with Defendants, effective as of December 31, 2007, whereby Gordon agreed to sell 100% of the issued and outstanding stock of GL Rehabilitation to Defendants.

7.     A copy of the Agreement, signed by all parties, is attached hereto as Exhibit "A."

8.     Defendants were at the time of the sale, and continue to be, employees of GL Rehabilitation.

9.     Defendant Larson was also, at the time the Agreement was entered into, the Secretary of GL Rehabilitation.

10.     The Agreement was negotiated in substantial part in Illinois, was executed in Illinois by the Plaintiff, and was performed in substantial part by the Plaintiff in Illinois.

11.     The Agreement, in Section 19 on page 7 thereof, states, in part, that the Agreement "is being delivered in the State of Illinois and is intended to be performed in the State of Illinois ... ."

12.     The Agreement also states, in Section 19, that it is to be "construed and enforced in accordance with the laws of the State of Illinois."

2

13.    The Closing of the sale under the Agreement occurred at Mt. Prospect National Bank, 50 N. Main Street, Mount Prospect, Illinois, in Cook County.

14.    Venue in this Court is proper under 735 ILCS 5/2-101.

### COUNT I – DECLARATORY JUDGMENT

15.    Paragraphs 1 thru 14, above, are incorporated herein by this reference.

16.    The Agreement (Exhibit A) contains various terms which allocate, between the parties, responsibility for various expenses and liabilities, and identify certain assets which the Plaintiff was to retain at and after the Closing of the sale.

17.    The parties' respective promises under the Agreement comprised their mutual consideration for entering into the Agreement.

18.    Almost immediately after the Closing, the parties began to disagree as to whether each of them had complied with its duties, or deprived the other party of its rights, under the Agreement.

19.    For example, Section 4(c) of the Agreement provided that Plaintiff would retain the cash in the company's bank accounts, net of checks issued prior to Closing, while Section 6 called for the Plaintiff to pay certain expenses of the Corporation incurred prior to the Closing.

20.    Defendant Larson, as manager, prior to Closing, of the Corporation's office where the Defendants worked, was issued an American Express Credit Card on the personal account of the Plaintiff, under instructions that she was only to use the card for legitimate business purposes of the Corporation.

21.    In addition, Larson was given authority to instruct the Corporation's payroll service, ADP, on the amounts of pay to issue to the Corporation's employees each pay period.

3

22.     ADP, acting on Larson's instructions, would then issue checks to the Corporation's employees, drawn against the Corporation's bank account.

23.     After the Closing, Plaintiff discovered that Larson had depleted the company's bank accounts by instructing ADP to pay employee "bonuses" of more than $10,000.00 the last week in December before the Closing.

24.     Presumably, the bulk of the so-called bonuses went to the two Defendants.

25.     The bonuses were paid without authorization from the Plaintiff as President and sole shareholder of the company.

26.     In fact, prior to their issuance, Plaintiff had expressly instructed Defendant Larson not to pay bonuses for the year, due to the Corporation's weak finances.

27.     The purported bonus payments were not disclosed to Plaintiff prior to the Closing, and were unknown to her as of that time.

28.     The effect of the so-called bonus payments was to deplete the cash which Plaintiff was entitled to receive under Section 4(c) of the Agreement, and/or resulted in a shortfall of cash in the Corporation's bank accounts with which to cover checks previously issued for different, legitimate purposes.

29.     In addition, after the Closing, Defendants demanded that Plaintiff pay $7,756.24 in alleged employee mileage expenses.

30.     This included more than $6,000.00 in such expenses for Defendant Shilts and Defendant Larson's live-in companion, Mark Schuster, covering a 2-year period.

31.     Defendants had never previously disclosed to Plaintiff the existence of these supposed mileage claims.

6280415v3 885509

32.    In Section 14 of the Agreement, the Defendants represented and warranted "that they have no knowledge of claims which exist or are threatened against the Corporation, that they have made no material changes to, or suffered or incurred any liability with respect to the Business, or the Corporation except as provided herein ... ."

33.    The Defendants breached the warranties of Section 14 by creating undisclosed and improper claims with respect to the business, in the sum of at least $10,000.00 due to the undisclosed payment of the bonuses, and in the sum of at least $7,756.24 by reason of the undisclosed mileage claims.

34.    In addition, at the time the bonuses were paid, the Defendants, as employees of the Corporation, owed a fiduciary duty of loyalty to the Corporation, and to the Plaintiff as its sole owner, not to spend money contrary to her instructions, and to inform the Plaintiff in a timely fashion of expenditures made.

35.    The Defendants breached their fiduciary duties by paying the aforesaid bonuses in contravention of Plaintiff's instructions, and by failing to inform the Plaintiff of the bonus payments and mileage claims before the Agreement was signed and before the sale which it contemplated was closed.

36.    In addition, the Defendants' representation in Section 14 of the Agreement was made by them with knowledge of its falsehood, for the purpose of inducing the Plaintiff to sign the Agreement and potentially be obligated to pick up the tab for the bonuses and mileage claims.

37.    The failure of Defendants to disclose the bonuses and mileage claims before the Plaintiff executed the Agreement was an omission of material facts which were necessary to render accurate the express statements of Section 14.

6280415v3 885509

38.     Plaintiff reasonably relied upon the Defendants' statements in Section 14, and their omissions with respect to the bonuses and mileage claims, by executing the Agreement, closing the sale, and signing at Closing a so-called "Release," attached as Exhibit "B."

39.     Even in the absence of express misrepresentations or breach of fiduciary duty, the withholding of information by the Defendants as to bonuses and mileage claims, which the Defendants now demand that the Plaintiff pay but which only the Defendants would have known about, comprised a constructive fraud justifying rescission of the Release, as well as damages.

40.     Section 15 of the Agreement provides that provisions, warranties and representations therein survived Closing; consequently, the Release cannot be interpreted so as to release claims arising under the Agreement in any event.

41.     The Plaintiff has performed and satisfied all conditions on her part which are required in order to entitle her to full performance of the Agreement by the Defendants.

42.     If Plaintiff is deemed responsible for any bank shortfall as of the date of Closing or for mileage claims, then she has been injured as a direct and proximate result of the Defendants' breach of warranty, breach of fiduciary duty, fraudulent misrepresentation, and constructive fraud inherent in the unauthorized bonuses and undisclosed mileage claims – a sum of at least $17,756.24.

43.     Plaintiff faxed to Defendant Larson, on January 12, 2008, the memo attached hereto as Exhibit "C," objecting to the co-called bonus payments.

44.     The Plaintiff also denied liability for the alleged mileage claims, by returning to the Defendants the alleged "Mileage Expense Reports" for Shilts' and Schuster's mileage claims, which were sent to the Plaintiff in early January 2008, with notations from Plaintiff denying responsibility. See Exhibits "D" and "E," attached.

6280415v3 885509

45.    Defendants responded with a letter from their attorney on January 28, 2008, claiming that Plaintiff owes $169,575.70 (copy attached as Exhibit "F"), and demanding immediate payment thereof.

46.    Plaintiff denies responsibility for virtually all of the sums claimed by Defendants in their attorney's letter (including the bank account shortfall arising from the unauthorized bonuses described above, and the purported mileage expenses which went unreported for 2 years until after the Closing).

47.    An actual and justiciable controversy exists among the parties as to the following sums claimed by the Defendants (reference being made to portions of their attorney's spreadsheet):

a.    Section 1: $11,826.19 in alleged "Wages" from December 22-28, 2007. This includes at least $10,000.00 in bonuses paid to Defendants, which Plaintiff explicitly instructed Defendants not to pay, as stated above. Therefore, at least $10,000.00 of this amount is not owed by Plaintiff, or at least is subject to a setoff

b.    Section 1: $1,483.72 in alleged "Federal Withholding" from December 22-28, 2007. Under Section 5(a) of the Agreement, these expenses are allocated to the Buyers (i.e., the Defendants), and therefore are not owed by Plaintiff.

c.    Section 1: $683.76 in "State Withholding" from December 22-28, 2007: Under Section 5(a) of the Agreement, these expenses are allocated to the Buyers, and therefore not owed by Plaintiff.

d.    Section 2: $11,937.75 for "Midwest Overdraft Amount". Virtually all of this amount is the result of the unauthorized bonuses discussed above, and to that extent is not the responsibility of Plaintiff. In addition, the balance of the shortfall represents at least

7

$1,250.00 in payments for patient services which, on information and belief, were made in 2007 but not sent by the Defendants to Plaintiff for deposit to the Corporation's accounts at that time; instead, those sums were re-billed after Closing, and presumably deposited thereafter in accounts belonging to the Defendants, in an apparent deliberate effort to deprive Plaintiff of the benefit of this cash. In addition, Plaintiff is entitled to setoffs as described in sub-paragraph f, below.

    e.  Section 2: Alleged Additional "Midwest Overdraft Amount." Amounts of $6,020.20, $9,321.00, $26.81, $67.01, $1,386.99, and $1,290.00, if withdrawn, were properly available to Plaintiff, and might comprise "overdrafts" only as a result of the improper bonus payments referenced above, failure to deposit company revenues in 2007 as referenced above, and/or January 2008 expenses which are the responsibility of Defendants as the Buyers, pursuant to Section 9 of the Agreement.

    f.  Section 2: Various amounts under alleged "Withdrawal (spent) from Midwest Account of January deposits" totalling $12,391.43. Plaintiff has not been provided backup of these amounts showing that they are for authorized expenses of GL Rehabilitation incurred prior to January 1, 2008. In addition, any amounts owed are subject to a setoff by reason of unauthorized charges made by Larson against the American Express Credit Card account of Plaintiff and not disclosed prior to Closing, including but not limited to: (i) at least $1,250.00 charged after the Closing; (ii) over $1,500.00 charged in December 2007 and January 2008 for rental of a personal car at Enterprise by Defendant Shilts; (iii) at least $1,200.00 for personal purchases at Barnes & Nobel and Amazon in December 2007; (iv) $267.00 for dinner at Morton's in Chicago; (v) at least $1,677.00 in supply purchases which the Defendants deliberately and surreptitiously accelerated during the period when the Agreement was being negotiated, in a bad faith effort to make those an unforeseen expense to the Plaintiff benefiting

8

only the Defendants after Closing (at Econoprint, U.S. Postal Service, and Staples, among other places); (vi) $895.00 paid to APTA (a professional organization) in December.

        g.     <u>Section 3: $84.37 and $87.17 for ADP</u>.  These amounts have been paid by Plaintiff.

        h.     <u>Section 4: $613.81 for Dell.</u>  This is a lease for a computer incurred on a monthly forward-looking basis as the computer is used, and is the responsibility of the Defendants beginning with the January 2008 payment.

        i.     <u>Section 5: $613.81</u>.  This amount has been paid.

        j.     <u>Section 6: Alleged Mileage charges of $4,564.92 and $1,584.00 for Jeanne Shilts and Mark Schuster</u>.  As discussed above, these amounts were never submitted during the last two years, and Defendant just submitted block requests for payment after the sale closed. $62.00 for license renewal of Melissa Monte was not an obligation of GL Rehabilitation, and is therefore not due from Plaintiff. The remaining amounts have been or will be paid by Plaintiff.

        k.     <u>Section 7: Alleged Evansville Review for $276.31</u>.  This is for a 2008 directory and not the responsibility of Plaintiff.

        l.     <u>Section 10: FedEx Charges</u>.  $22.93 has been paid by Plaintiff.

        m.     <u>Section 12: Health EOS</u>.  $50.00 has been paid by Plaintiff.

        n.     <u>Section 13: Lifetech.</u>  Total charges of $943.28 have been paid by Plaintiff.

        o.     <u>Section 15: Alleged New Publishing</u>.  No backup for $157.02 has been provided to Plaintiff.

        p.     <u>Section 16: Provider Serve</u>.  $3,312.02 has been paid by Plaintiff.

6280415v3 885509

q.    Section 18: Stroud & Associates. The amount of $443.75 claimed is for services by the Defendants' lawfirm, presumably for services to the Defendants rather than the Corporation, and Plaintiff is not responsible for Defendant's fees incurred in relation to the sale pursuant to Paragraph 16 of the Agreement.

r.    Section 19: TDS Accounts. GL Rehabilitation had a credit with this company through December 2007; therefore, the total amount claimed of $412.93 was incurred in 2008 and is not due from Plaintiff.

s.    Section 20: Verizon. Plaintiff paid the $70.73 portion of the total bill which was due from her. The $105.89 now claimed was incurred after Closing and is not the responsibility of Plaintiff.

t.    Section 21: Quill. $302.32 paid by Plaintiff. $270.22 remaining of $572.54 total was incurred after Closing and is not Plaintiff's responsibility.

u.    Section 24: Wolfpac. $100.00 was paid by Plaintiff.

v.    Section 25: Capital Plumbing. $147.17 was paid by Plaintiff.

w.    Section 26: Anthem Dental. $371.82 is for coverage after the Closing date and Buyer's responsibility.

x.    Section 27: Alleged $13,885.41 for Second Quarter 2007 FICA, federal and state unemployment tax, and state and federal withholdings. Defendants do not break out these amounts, so it is unclear which portion is attributable to items other than withholding tax. Plaintiff has contacted the IRS for correction of an error by the IRS in failing to credit the Corporation for previous payments. No amount is owed pursuant to the Agreement until the disagreement with IRS is resolved, and if anything will ultimately be owed, that amount is presently unknown.

6280415v3 885509

y.    Section 28: $38,863.45 for Third Quarter 2007 FICA, federal and state unemployment tax, and state and federal withholdings. These amounts have been previously paid, and are therefore not owed by Plaintiff.

z.    Section 29: Alleged $44,004.03 for Fourth Quarter 2007 FICA, federal and state unemployment tax, and state and federal withholdings. These amounts are the responsibility of Defendants pursuant to Paragraph 5(a) of the Agreement.

aa.    Section 30: Alleged $1,643.19 for Federal Unemployment. Federal unemployment taxes owed for the last three quarters of 2007 have not yet been calculated.

48.    There may be additional sums which the Defendants will claim are owed by the Plaintiff under the Agreement, which it is necessary to ascertain and liquidate in order to avoid repetitious litigation.

49.    Pursuant to 735 ILCS 5/2-701 and other applicable law, the Court has jurisdiction to declare the rights of the parties with respect to the sums which Defendants claim are due from Plaintiff, above.

WHEREFORE, the Plaintiff, CAROL M. GORDON, prays for judgment as follows:

i.    Declaring that the indicated portions of the $167,664.57 claimed by Defendants are not the responsibility of Plaintiff;

ii.    Declaring the totality of Plaintiff's obligations to the Defendants or to the Corporation, if any, under the Agreement;

iii.    Rescinding the Release attached hereto as Exhibit B or, in the alternative, declaring that it does not bar Plaintiff's defenses to any sums claimed by Defendants to be owed by Plaintiff, or the assertion by Plaintiff of a setoff in the amount of obligations incurred by Plaintiff as a result of breach of warranties or other provisions of the Agreement;

iv.    Awarding Plaintiff its costs of suit; and

v.    Such other and further relief as the Court deems appropriate in accordance with applicable rules of law and equity.

11

## COUNT II – RESCISSION

50.     Paragraphs 1 thru 49 are incorporated herein by this reference.

51.     In addition to claims comprised of the unauthorized bonuses and undisclosed mileage claims totaling at least $17,756.24, approximately another $1,250.00 in payments for patient services, on information and belief, was diverted by the Defendants in that the payments were made in 2007 but not sent by the Defendants to Plaintiff for deposit to the Corporation's accounts at that time; instead, those sums were re-billed after Closing, and presumably deposited thereafter in accounts belonging to the Defendants, in an apparently deliberate effort to deprive Plaintiff of the benefit of this cash.

52.     Further, Larson, in breach of the warranties and fiduciary duties described above, and in furtherance of her misrepresentations by omission and constructive fraud described above, made unauthorized charges against the American Express Credit Card account of Plaintiff and not disclosed prior to Closing, including but not limited to: (i) at least $1,250.00 charged after the Closing; (ii) over $1,500.00 charged in December 2007 and January 2008 for rental of a personal car at Enterprise by Defendant Shilts; (iii) at least $1,200.00 for personal purchases at Barnes & Nobel and Amazon in December 2007; (iv) $267.00 for dinner at Morton's in Chicago; (v) at least $1,677.00 in supply purchases which the Defendants deliberately and surreptitiously accelerated during the period when the Agreement was being negotiated, in a bad faith effort to make those an unforeseen expense to the Plaintiff benefiting only the Defendants after Closing; (vi) $895.00 paid to APTA (a professional organization) in December.

53.     The sum of newly discovered claims and misappropriated funds resulting from Defendants' misrepresentations, fraudulent omissions, breach of fiduciary duty, and constructive fraud as described above, totaling at least $25,795.24, are material given the $100,001.00 purchase price under Section 2 of the Agreement.

6280415v3 885509

54.    The Plaintiff would not have entered into the Release attached as Exhibit B had she known of the circumstances described above.

WHEREFORE, Plaintiff, CAROL M. GORDON, prays for an order rescinding the Release attached hereto as Exhibit B, and such other and further relief as is appropriate in accordance with applicable rules of law and equity.

## COUNT III – DAMAGES FOR BREACH OF WARRANTY, BREACH OF FIDUCIARY DUTY, AND FRAUD

55.    Paragraphs 1 thru 54 are incorporated herein by reference.

56.    Plaintiff has been injured and has suffered damages in the sum of at least $25,795.24 referred to in Paragraph 53, above, as a direct and proximate result of the breach of warranties and fiduciary duties, misrepresentations by omission, and constructive fraud described above.

57.    In addition to the sum of $25,795.24 referred to in Paragraph 53, above, Plaintiff has suffered additional damages as a direct and proximate result of the breach of warranties and fiduciary duties, misrepresentations by omission, and constructive fraud described above, comprised of additional unauthorized American Express Credit Card charges by Larson of at least $502.37 at DiMaggio's restaurant and $731.00 at Altman Luggage.

WHEREFORE, Plaintiff, CAROL M. GORDON, prays for judgment against Defendant ILENE LARSON for compensatory damages in the sum of at least $27,028.61, plus punitive damages in a sum to be determined at trial, plus costs of suit, and such other and further relief as the Court deems appropriate in accordance with applicable rules of law and equity.

## COUNT IV – CONVERSION

58.    Paragraphs 1 thru 57 are incorporated herein by reference.

6280415v3 885509

59.    Plaintiff loaned to the Corporation an item of therapy equipment known as a "Game Ready," valued at approximately $3,500.00, prior to the Closing.

60.    After the Closing, Plaintiff made at least three (3) written demands upon Defendant Larson, by facsimile, that the Defendants return the Game Ready, but Defendants have refused.

61.    At all times, the Plaintiff had an absolute and unconditional right to immediate possession of the Game Ready.

62.    The Defendants, jointly and severally, wrongfully and without authorization, assumed control, dominion, or ownership over the Game Ready, and have refused to turn it over in response to the demand made by the Plaintiff.

63.    As a direct and proximate result of the Defendants' foregoing conduct, the Plaintiff has suffered damages in an amount equal to the fair market value or replacement cost of the Game Ready.

64.    Defendant Larson acted intentionally, with malice, and with specific intent to harm the Plaintiff in refusing to return the Game Ready.

WHEREFORE, the Plaintiffs pray for judgment against the Defendants and the Corporation, jointly and severally, for compensatory damages in the sum of at least $3,500.00, plus punitive damages against Defendant Larson in a sum to be determined at trial, plus costs of suit, and such other and further relief as the Court deems appropriate in accordance with applicable rules of law and equity.

PLAINTIFFS DEMAND TRIAL BY A 12-PERSON JURY ON ALL MATTERS WHERE JURY TRIAL IS ALLOWED UNDER THE LAW.

6280415v3 885509

Respectfully Submitted,

CAROL M. GORDON, Plaintiff

By: _____
          Her Attorney

Gregg I. Minkow
Max J. Kanter
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, IL  60601-1081
(312) 704-3000
Firm ID No. 90384

6280415v3 885509

# GL REHABILITATION SERVICES, LTD.
## STOCK PURCHASE AGREEMENT

This Agreement is made and entered into effective this 31st day of December, 2007, by and between Carol M. Gordon, PhD., P.T., OSC (hereinafter "Seller") and Ilene Larson and Jeanne Shilts (hereinafter "Buyer," or "Buyers") (Seller and Buyers hereinafter also referred to as "Party," or collectively as the "Parties").

WHEREAS, GL Rehabilitation Services, Ltd., is an Illinois corporation (hereinafter "Corporation") and is engaged in the business of providing rehabilitation services to patients, clinics and nursing home facilities located in the State of Wisconsin (hereinafter the "Business"); and

WHEREAS, Seller owns all of the issued and outstanding shares of the Corporation's stock (hereinafter the "Shares") and is knowledgeable regarding the Business and the operations of the Corporation; and

WHEREAS, Buyers desire to purchase the Shares from Seller and Seller desires to sell the Shares to Buyers so that Buyers shall then own all of the Shares of the Corporation;

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants, terms, promises and conditions hereinafter set forth, and other good and valuable consideration, the receipt of which is acknowledged by the signatures of the Parties below, the Parties do hereby agree as follows:

1. **Sale of Stock to Buyers.** Seller agrees to sell and convey to Buyers, and Buyers agree to purchase from Seller, all of the issued and outstanding Shares of the Corporation. Seller owns 1,000 Shares of the Corporation's stock, which represents all of its issued and outstanding Shares. Seller owns these Shares free and clear of any



**EXHIBIT**

**A**

01/05/2008  11:51    6303502842    ELMHURST
01/05/2008  11:51    6303502842    ELMHURST
PAGE  07/08
PAGE  07/08

security interest, lien, encumbrance or claim of any other person or entity. The Shares have not been assigned or pledged to any other person or entity and are not subject to any transfer restriction.

2.     Purchase Price. Buyers shall pay to Seller:

a.     Payment to Seller. tThe sum of One Dollar ($1.00), representing the full payment due for all outstanding Shares of the Corporation.

b.     Loan Repayment. Buyers agree to pay the sum of One Hundred Thousand Dollars ($100,000.00) to be applied against the Corporation's line of credit loan at Mt. Prospect National Bank in Mt. Prospect, Illinois. Seller is responsible for any remaining indebtedness so that the Corporation's line of credit loan is paid in full and retired as of the Closing Date.

3.     Closing Date and Location. This purchase and sale transaction shall close on December 31, 2007 ("Closing Date") and shall be effective as of 12:01 a.m. January 1, 2008. The closing will be held on December 31, 2007 at 11:00 a.m. at Mt. Prospect National Bank, 50 North Main Street, Mt. Prospect, Illinois or at such other location as may be agreed to by the parties. Time shall be considered to be of the essence. Any closing subsequent to December 31, 2007 shall be given retroactive effect to January 1, 2008 as of 12:01 a.m. as if closed on December 31, 2007.

4.     Assets to be Distributed to Seller. Buyers shall not be entitled to acquire the following corporate assets, which may be reflected as part of the Corporation's financial records as of the Closing Date. It is understood and agreed to by and between the Parties that such assets are instead to be distributed by the Corporation to the Seller, effective as of December 31, 2007:

a.     Any and all notes, loans, advances or any other amounts which may be owed to the Corporation by Elmhurst Rehabilitation Services, Ltd.;

2

   b.    Any and all notes, loans, advances or any other amounts which may be owed to the Corporation by Seller;

   c.    The sum total of cash in any and all of Corporation's checking and/or savings accounts, including those at Chase Bank, and Mt. Prospect National Bank, but not the sum equal to any issued but outstanding checks as of the Closing Date.

   5.    <u>Corporate Obligations to be Assumed/Paid by Buyers</u>. Buyers agree to assume, pay or have paid on behalf of the Corporation (and to hold Seller harmless from same) the following obligations which are owed by the Corporation as of the Closing Date:

   a.    FICA, Medicare and Social Security taxes (including interest and penalties arising from their delinquent payment) which are owed and unpaid for the Fourth Quarter of calendar year 2007 arising from wages paid by the Corporation to its employees, and

   b.    IRA contributions for the Corporation's employees and employer-matched IRA contributions for the Corporation's employees which are owed and outstanding for calendar year 2007 (including interest and penalties arising from their delinquent payment).

   6.    <u>Liabilities to be Paid by Seller</u>. As of the Closing Date, Seller shall pay, or cause to be paid, or be responsible for the payment of, any and all salaries and/or wages which were incurred on or before December 28, 2007, except for these corporate obligations set forth in paragraph 5, above, which shall be paid by Buyers. In addition, Seller shall pay, or cause to be paid, or be responsible for the payment of, any and all other financial liabilities of the Corporation, which arose, or were incurred, on or before the Closing Date. It is understood and agreed to by and between the Parties that

3

Buyers shall be responsible for the payment of any and all salaries and wages, and the payroll taxes related thereto, which are incurred on or after December 29, 2007, and for the payment of any and all other liabilities which are incurred after the Closing Date.

7.    **Financial Condition of Corporation.** Seller hereby warrants and represents that the Corporation's Balance Sheet as of September 30, 2007, attached hereto as Exhibit 1, is accurate as of the date of this Agreement, to the best of Seller's knowledge and belief.

8.    **Accounts Receivable.** Corporation's accounts receivable which are collected by the Corporation on and prior to Closing Date shall be applied by Seller to pay Corporation's liabilities as provided herein with any net balance belonging to Seller as provided in paragraph 4(c), above. All of the Corporation's accounts receivable collected and received subsequent to the Closing Date shall belong to Corporation to be utilized by Buyers for the Corporation's post-closing obligations and liabilities.

9.    **Mutual Indemnification.** Conditioned upon performance of their respective obligations set forth herein, Seller agrees to indemnify and hold Corporation and Buyers harmless from any and all claims, liabilities and financial obligations of Corporation accruing or arising on or before Closing Date and Buyers agree to indemnify and hold Seller harmless from any and all claims, liabilities and obligations of Corporation accruing or arising after the Closing Date.

10.    **Closing Activities.** As of the Closing Date, Seller shall endorse, execute and deliver to Buyers all stock certificates and stock powers representing and conveying her conveyance of her ownership of the Shares, and shall resign as a director, officer and employee of Corporation. Buyers may remove Seller's name as a signatory on any and all of Corporation's bank accounts, including its savings and checking accounts. The Corporate Minute Book and seal, and all files containing the Corporation's licenses,

4

permits and governmental authorizations which are in Seller's possession or within her control shall be delivered to Buyers. Seller shall release the Corporation and Buyers from all claims and liabilities of any nature for any debt, act or omission preceding the Closing.

11.    Activities Preceding Closing. Prior to the Closing, the Parties agree to reasonably cooperate with one another and their respective representatives, including making reasonable provision of information and documents which are within each Party's possession or control, and which are requested by any other Party. The Parties agree to use all reasonable efforts to insure that the Corporation carries on its Business diligently and in substantially the same manner as heretofore and to make no material changes to the Business, management, accounting, tax reporting or operation, except with the prior written consent of the other Parties to this Agreement. Seller shall not pledge or encumber the Shares or the assets of the Corporation. The sale shall not be disclosed publicly without the written approval of all parties. The Parties agree to use all reasonable efforts to preserve the Corporation's present relationships with its patients, healthcare facilities and employees, and to perpetuate all licenses, permits and governmental authorizations.

12.    Post-Closing Cooperation. After the Closing, the Parties agree to reasonably cooperate with each other and their respective representatives, including the provision of information and documents in the other party's possession or control, in order to facilitate the effective transfer of ownership, and to perpetuate the continued operation of the Business by Corporation. Seller shall be the Corporation's sole shareholder through December 31, 2007, and Buyers shall be its sole shareholders effective January 1, 2008.

13.   Seller's Warranties and Representations.  Seller represents and warrants that as of the date of this Agreement and continuing to the Closing Date, that she has full power and legal right and authority to enter into and execute this Agreement and all documents contemplated herein, that the Corporation is in good standing, that she has no knowledge of any claims which exist or are threatened against the Corporation which have not been previously disclosed or provided to Buyers, that she has made no material changes to, or suffered or incurred any liability with respect to, the Business, or the Corporation, except as provided herein, and that she is in compliance with the terms and provisions of this Agreement.

14.   Buyers' Warranties and Representations.  Buyers represent and warrant, as of the date of this Agreement and continuing to the Closing Date, that they have full power and legal right and authority to enter into and execute this Agreement and all documents contemplated herein, that they have no knowledge of claims which exist or are threatened against the Corporation, that they have made no material changes to, or suffered or incurred any liability with respect to the Business, or the Corporation except as provided herein and that they are in compliance with the terms and provisions of this Agreement.

15.   Survival of Warranties and Representations.  The provisions, warranties and representations contained herein shall survive the closing of this transaction.

16.   Transaction Expenses.  Each Party to this Agreement acknowledges that she is responsible for her own respective costs, expenses or fees incurred in, or arising from, this transaction, including any taxes arising therefrom.

17.   Entire Agreement.  This Agreement constitutes the entire agreement between the Parties and supersedes any prior agreement or understanding.  Once signed, it may only be amended or modified in a written instrument signed by all Parties.

6

18.   Binding Effect.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto, and their respective heirs, executors, administrators, legal representatives, successors and assigns.

19.   Governing Law.  This Agreement is being delivered and is intended to be performed in the State of Illinois, and shall be construed and enforced in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

SELLER:

_____
Carol M. Gordon, PhD., P.T., OSC

BUYERS:

_____
Ilene Larson

_____
Jeanne Shilts

7

## RELEASE

The undersigned, Carol M. Gordon, in accordance with the terms of that certain Stock Purchase Agreement dated as of December 31, 2007 (the "Agreement"), does hereby release GL Rehabilitation Services, Ltd., an Illinois corporation, Ilene Larson and Jeanne Shilts from any and all claims and liabilities of any nature for any debt, act or omission preceding the closing of the stock sale and purchase transaction contemplated in the Agreement.

Dated as of January 1, 2008.

Carol M. Gordon


PLAINTIFF'S
EXHIBIT
B

# Elmhurst Rehabilitation, S.C.

*FAX* Confidential Health Information Enclosed

Date: 1/12/08 Time: _____ Number of Pages: _____
From: CARO GORDON _____ Fax Number: _____
To: JISA S LARSON _____ Fax Number: 608 223 7459
Company: CL _____

RE: So what would you think if you
picked up the phone & heard someone
screaming at you without even a
hello?

Message: I wanted out of CL not so much because
of the work & & responsibilities, but
because you will only do as you
want, you don't even know how to be a
partner, not did you have any respect
for the fact that I owned the company,
you took no suggestions, regards,
demands from me at any time,
it is only your way, that is impossible
& untenable to deal with.

I asked you to not re-sign the LSM
contract due to low billings, you re-signed
& there was a rent raise. You signed a multi-year contract on
the out pt. clinic space & only let me
know later about the clinic.
I told you we couldn't afford bonuses —
So you gave ( $10,000.

This Facsimile message may contain privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that the dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please notify us by telephone immediately and destroy the related message. Thank you.

143 Bernice Street, Bensenville, IL 60106-3366 PHONE: (630) 350-2736 FAX: (630) 350-2842
*Physical Therapy* *Occupational Therapy*



PLAINTIFF'S
EXHIBIT

C

## GL Rehabilitation Services
## Mileage Expense Report

| Today's Date: 2006-2007 | Mail Check To: Jeanne Shilts |
|---|---|
| Name: Jeanne Shilts | Street Address: |
| Daytime Phone Number: | City, State, Zip: |

| Date | | To | Purpose | Miles traveled |
|---|---|---|---|---|
| 2006 2007 | Mileage for 2 years. I have copies of all individual mileage. Will fax if you need | | | 12680 |

*You never sent them in in those years. NO*

| Elm Village | | EVM | | NOH | | VC | |
|---|---|---|---|---|---|---|---|
| To EVM | 29 miles | To NOH | 34 miles | To EVM | 24 miles | To EVM | 24 miles |
| To NOH | 22 miles | To CV | 29 miles | To CV | 22 miles | To CV | 5 miles |
| To VC | 5 miles | TO VC | 24 miles | To VC | 18 miles | To NOH | 18 miles |

Total Mileage __12680__

Total Reimbursement @ .36/mile $ __4564.80__

Facility: _____ G/L Account: _____ ☐AD ☐OT ☐PT ☐ST

Employee Signature: _____ Date: _____

Rehabilitation Agency Administrator/Date

*Instructions: Mileage between NAZ and NOH is logged in as 35 miles. Remember that mileage in between facilities, not to and from work. Also if the trip is to the facility is on your way home, the mileage recorded is the difference between your normal trip home and to the facility.*
*Distribution: FAX to Rehab Agency Administrator. Copy in Financial Records Manual*

Page _____ of _____

Form/FM/Mileage Expense Report/Feb 2006

GL Rehabilitation Services

PLAINTIFF'S EXHIBIT D

## GL Rehabilitation Services
## Mileage Expense Report

| Today's Date: 2006 2007 | Mail Check To: MARK Schuster |
|---|---|
| Name: MARK Schuster | Street Address: |
| Daytime Phone Number: | City, State, Zip: |

| Date | From | To | Purpose | Miles traveled |
|---|---|---|---|---|
| 2006 2007 | Mileage TO CENTERS | | never sent in those years | 4,400 |

*(handwritten across the form: "never sent in those years NO")*

| Cor Mileage | | EVM | | NOH | | VC | |
|---|---|---|---|---|---|---|---|
| To EVM | 29 miles | To NOH | 24 miles | To EVM | 24 miles | To EVM | 24 miles |
| To NOH | 22 miles | To CV | 29 miles | To CV | 22 miles | To CV | 5 miles |
| To VC | 5 miles | TO VC | 24 miles | To VC | 13 miles | To NOH | 12 miles |

| | |
|---|---|
| Total Mileage | 4400 |
| Total Reimbursement @ .36/mile | $ 1584 |

Facility: _____  G/L Account: _____  ☐AD ☐OT ☐PT ☐ST

Employee Signature: Will FAX All, individual mileage sheets upon request  Date: _____

Rehabilitation Agency Administrator/Date

*Instructions: Mileage between NAZ and NOH is logged in at 55 miles. Remember that mileage is between facilities, not to and from work. Also if the trip to the facility is on your way home, the mileage recorded is the difference between your normal trip home and to the facility.*

*Distribution: FAX to Rehab Agency Administrator. Copy in Financial Records Manual*

Page ____ of ____

Form/FM/Mileage Expense Report/Feb 2006  GL Rehabilitation Services

PLAINTIFF'S EXHIBIT
E

LAW OFFICES

# STROUD, WILLINK & HOWARD, LLC

25 WEST MAIN STREET

SUITE 300

P.O. BOX 2236

**MADISON, WISCONSIN 53701-2236**

——

TELEPHONE (608) 257-2281

FACSIMILE (608) 257-7643

email@stroudlaw.com

www.stroudlaw.com

January 28, 2008

**VIA FEDERAL EXPRESS AND U.S. MAIL**

Carol Gordon
Peregrine #106
0065 Wheeler Place
Copper Mountain, CO 80443

Carol Gordon
P. O. Box 5326
Frisco, CO 80443

Dear Ms. Gordon:

This letter is in follow-up to the request for payment of outstanding liabilities sent to you by our clients, Ilene Larson and Jeanne Shilts, on January 14, 2008. As that letter pointed out, and as expressly stated in paragraphs 3 and 6 of the Stock Purchase Agreement (the "Agreement"), you are responsible for payment and satisfaction of <u>all</u> financial obligations and liabilities of GL Rehabilitation Services, Ltd. ("GL") that arose or were <u>incurred</u> prior to the Closing Date (January 1, 2008), except for the salaries and wages of GL's employees, for which you are personally responsible through December 28, 2007.

As of the date of this letter, there remain outstanding over One Hundred Sixty-Nine Thousand Five Hundred Seventy Five Dollars and 70/100s ($169,575.70) worth of GL liabilities incurred and outstanding as of the Closing Date. These liabilities are your responsibility under the Agreement and must be paid by you. The attached spreadsheet details these payment obligations, and you have already received supporting documentation for your reference.

You have flagrantly violated paragraphs 4.c. and 8 of the Agreement by leaving GL's account with Midwest Bank in a serious overdraft condition and by spending and withdrawing funds which were collected and received by GL after the Closing Date. The attached spreadsheet details the Midwest Bank funds owed by you as of the date of this

ESTABLISHED 1892



STROUD, WILLINK & HOWARD, LLC

Carol Gordon
January 28, 2008
Page 2


letter, including overdrafts, GL January deposits applied to cover your pre-closing obligations, overdraft fees, and December service charges.

The calculation of your outstanding indebtedness shown on the attached spreadsheet does not include unpaid FICA, Medicare, Social Security, FUTA, and SUTA taxes for the fourth quarter of 2007, which under the Agreement our clients agreed to assume. You will also note that the attached spreadsheet has been updated to reflect payments made by you since you were first notified by our clients of your outstanding indebtedness, subject of course to the clearing of the checks used by you to tender payment. Please note that the attached spreadsheet is not intended to be a final listing of those outstanding liabilities and obligations that you are required to pay under the Agreement. The Midwest Bank account may still have your December checks coming in and GL has not yet finished calculating the amount of State Withholding taxes you are required to pay.

In addition to paying for the outstanding expenses owed by you under the terms of the Agreement, you are also responsible under paragraph 1 of the Agreement for satisfying and releasing lien number 010099404, filed by VGM Financial Services, a division of TCF Equipment Finance, Inc., with respect to leased equipment.

Please be advised that under both §§100.18 and 551.41 of the Wisconsin Statutes, a person is prohibited from either directly or indirectly making untrue statements, or from failing to disclose material information, in connection with the sale of shares of a corporation's stock. Under each of these statutes, violators are liable to the purchaser of the shares of stock for damages together with costs, including attorney fees. As detailed in this letter, you made numerous untrue statements and representations in connection with the sale of your GL stock and in violation of §§100.18 and 551.41, Wis. Stats. These include, without limitation, your warranty and representation that the bank accounts would not be in a negative balance, that you would timely pay all liabilities and expenses incurred prior to the Closing Date, that the corporation's assets were not subject to any outstanding security interests or liens, and that the corporation's September 30, 2007 financial statement was accurate.

**You are directed to forward to our offices a check made payable to GL Rehabilitation Services, Ltd. in the amount of $169,575.70.** Please be advised that if this payment has not been received by February 8, 2008, our clients have directed us to take the necessary legal steps to collect the amount owed to them under the Agreement. If it becomes necessary to bring an action for payment of these outstanding expenses and obligations, the lawsuit will demand damages and court costs and attorneys' fees under §§100.18 and 551.41, Wis. Stats.

STROUD, WILLINK & HOWARD, LLC

Carol Gordon
January 28, 2008
Page 3

You are also directed to take all steps necessary to satisfy and release the aforementioned lien regarding leased equipment, as required under paragraph 1 of the Agreement, and to forward to our office copies of all GL books and financial records, as required under paragraph 12 of the Agreement.

Your prompt attention to this matter is required.  I look forward to your immediate cooperation in resolving these issues.  If you fail to fully perform your obligations under the Agreement, you will be sued and will be responsible for the payment of my clients' attorneys' fees and court costs.  This is a very serious matter and you should immediately forward this letter to your attorney.  Further delay will not be tolerated.

Very truly yours,

STROUD, WILLINK & HOWARD, LLC

By: _____
H. Dale Peterson

HDP/neb

Enclosure

cc:    Ilene Larson
       Jeanne Shilts

Carol Gordon GL Unpaid Expenses 2007 Revised                    January 25, 2008

| Expenses | Date Expense Incurred | Amount Owed | Reported Paid | Comments | |
|---|---|---|---|---|---|
| **GL Payroll** | | | | | ① |
| Wages | Dec 22-Dec 28/07 | $11,826.19 | | | |
| Federal Withholding | Dec 22-Dec 28/07 | $1,483.72 | | | |
| WI State Income | Dec 22-Dec 28/07 | | 683.76 Pd with check 8671 | | |
| **Midwest Overdraft Amount** | Charges incurred prior to January 1, 2008 | $11,937.75 | | | ② |
| | Overdraft 1/14 and 1/16 | $6,020.20 | | added Jan 21 | |
| | Overdraft 1/17 | $9,321.00 | | added Jan21 | |
| | Overdraft Carol M Dec check | $26.81 | | added Jan 24 | |
| | Overdraft Geraldine Dec check | $67.01 | | added Jan 24 | |
| Dec Services Charges | | $1,386.99 | | | |
| Overdraft fees For Jan checks written as of Jan 11th | | $1,290.00 | | | |
| Withdrawal (spent) from Midwest Account of January deposits | | $1,640.64 | | | |
| | | $3,287.30 | | | |
| | | $428.68 | | | |
| | | $993.64 | | | |
| | | $1,700.00 | | | |
| | | $797.92 | | | |
| | | $2,429.00 | | | |
| | | $380.48 | | | |
| | | $733.77 | | Withdrawal total 12,391.43 used to cover Jan overdraft checks. | |
| **ADP** | 11/14/2007 | $84.37 | | States pd 12/31- which chekcing account on that day!- no evidence of payment. Overdraft | ③ |
| | 11/26/2007 | $87.17 | | States pd 12/31- which chekcing account on that day!- no evidence of payment. Overdraft | |
| | 12/10/2007 | | 85.77 pd with check 8670 | | |
| | 12/26/2007 | | 108.17 Pd with check 8670 | | |
| | 1/7/2008 | | 41.48 Pd with check | 82.97 - Carol owes 1/2, Dec 22-28 | |
| **Dell** | Remaining | $613.81 | | | ④ |
| **Department of Justice** | 12/1/07 | $31.00 | | | ⑤ |

Carol Gordon GL Unpaid Expenses 2007 Revised                    January 25, 2008

| Employee Expenses | | | | |
|---|---|---|---|---|
| Heather Crandell (mileage) | 11/27/07 | $167.04 | | |
| Heather Crandell | 11/27/07 | $95.21 | | |
| Heather Crandell (mileage) | 9/21/07 | $173.16 | | |
| Tracy Gibbs | 12/11/07 | $169.30 | | Pd with overdraft ch 2062 cleared on 1/7/08 |
| Sue Hinton (mileage) | 12/1/07 | $62.64 | | |
| Dana Lindsey (mileage) | 10/4/07 | $60.48 | | |
| Mary Lou McCormick (mileage) | 8/22/07 | $46.08 | | |
| Colleen McKillip (mileage) | 12/21/2007 | $55.44 | | |
| Melissa Monte (mileage) | 11/5/2007 | $44.28 | | |
| Mary Nawrocki | 11/28/07 | $62.00 | | Pd with overdraft check |
| Mary Nawrocki (mileage) | 12/26/2007 | $39.60 | | |
| Mary Nawrocki (mileage) | 12/20/2007 | $182.16 | | |
| Sandy Neustifter (mileage) | 10/4/2007 | $115.20 | | |
| Kim Riley (mileage) | 9/27/07 | $32.40 | | |
| Linda Rewey (mileage) | 12/21/07 | $76.68 | | |
| Linda Rewey | 12/21/07 | $11.08 | | |
| Linda Rewey | 1/3/2007 | $10.57 | | |
| Kim Tedesco | 11/16/07 | $62.00 | | |
| Jeanne Shilts (mileage) | 2006 & 2007 | $4,564.92 | | |
| Mark Schuster (mileage) | 2006 & 2007 | $1,584.00 | | |
| Tori Westerhagen (mileage) | 10/24/2007 | $18.00 | | |
| Melissa Monte Oct License Renewal | 11/28/2008 | $62.00 | | |
| Mary Lou McCormick (mileage) | Aug, Sept, Oct, Nov | $62.00 | | Added Jan 21 |
| Evansville Review | 11/20/2007 | $276.31 | | ⑦ |
| Janesville Gazette | 11/30/2007 | | 276.31 Reported pd | ⑧ |
| Charter Cable BV | Previous Balance on Dec Bill | | 60.45 Pd check 8666 | ⑨ |
| Federal Express | 12/26/2007 | $33.93 | December charges | Fed Ex to Besenville ⑩ |
| Guardian Life | 12/18/2007 | | 151.72 Reported as pd | ⑪ |
| Health EOS | December | $50.00 | | ⑫ |
| Lifetech | 11/29/2007 | $241.40 | | ⑬ |
| Lifetech | 12/5/2007 | $325.76 | | |
| Lifetech | 12/3/2007 | $169.35 | | |
| Lifetech | 12/21/2007 | $206.77 | | |
| New Glarus Pharmacy | 11/30/2007 | | 35.1 Pd with check 8667 | ⑭ |
| News Publishing CO | 9/20-12-20/07 | $157.02 | | ⑮ |

⑥

Carol Gordon GL Unpaid Expenses 2007 Revised

January 25, 2008

| | | | | | |
|---|---|---|---|---|---|
| Provider Serv | November Services | $3,312.02 | | There is also outstanding Dec bill that Provider Serv would like to be paid.n Lynn states that as of Jan 26th she has not been paid for Nov and Dec | (16) |
| Luedtke Storm Rental + yr utilit | December | | $610.60 | Called and reported paid through Dec 31. | (17) |
| Luedtke Storm Outstanding Ck | 2007 | | $357.00 | | |
| Stroud & Associates: GL Release and Informed Consent Agreements | Invoice dated 12/14/2007 for July, Oct November services | $443.75 | | Total balance 728.75, CG pd 285. Have faxed copy of the entire bill to detail charges DUE | (18) |
| TDS Account Number Coventry | Dec and before, Balance and current charges | $115.02 | | | (19) |
| TDS Accounts Number new Glar | Dec and before. Balance and current charges | $191.00 | | | |
| TDS Account Number Verona | Dec and before. Balance and current charges | $106.91 | | | |
| Verizon BV | Dec | $35.16 | Sent $70.73 check 8669. However total bill was 168.27, 62.38 ll portion, remainder 105.89 is CG amount | | (20) |
| Quill Outstanding | Outstanding Documented through Quill | $572.54 | | | (21) |
| ATT | December Services | | Corrected amount | Added Jan 18 | (22) |
| ATT | December Services | | Pd $21.00 check Corrected Amount | Added Jan 18 | |
| US Cellular | December Services | | 144.52 pd check 8673 | Added Jan 18 | (23) |
| Wolfpac Athletic Calendar | May Bill | $100.00 | | Added Jan 24 | (24) |
| Capital Plumbing | Aug Services | $147.17 | | Added Jan 24. This amount wa | (25) |
| Anthem Dental | Previous Balance | $371.82 | | | (26) |

Carol Gordon GL Unpaid Expenses  2007  Revised                                    January 25, 2008

| | | | | | |
|---|---|---|---|---|---|
| **Second Quarter** | | | | | Includes, Meidcare, Fica, SS, federal withholding +large deposit penalties and filing fees (27) |
| Medicare Fica Social Security | | $13,885.41 | | | |
| Federal Withholding | | | | | |
| State Withholding | | | | | Not calculated yet |
| FUTA | | | | | Not calculated yet |
| SUTA | | | | | Not calculated yet |
| **Third Quarter** | | | | | Includes, Meldcare, Fica, SS, federal withholding +large deposit penalties and fileing fees (28) |
| Medicare Fica Social Security | | $38,863.45 | | | |
| Federal Withholding | | | | | |
| State Withholding | | | | | Not calculated yet |
| FUTA | | | | | Not calculated yet |
| SUTA | | | | | Not calculated yet |
| **Fourth Quarter** | | | | | (29) |
| Medicare Fica Social Security | | | | | IL GL owes 4th quarter Meidcare, FICA, and SS.  CG owes 4th quarter Federal Wihholding. Most of this amount will be federal withholding. |
| Federal Withholding | | $44,004.03 | | | |
| State Withholding | | | | | Not calculated yet for CG GL |
| FUTA | | | | | Not calculated yet IL GL |
| SUTA | | | | | Not calculated yet IL GL |
| Federal Unemployment | | $1,643.19 | | | Owed.  Account is currently calculating who owes this (30) |
| | | | | | |
| | | | | | |
| | TOTAL | $169,575.70 | | | |