IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAROL M. GORDON,<br><br>      Plaintiff,<br>v.<br><br>ILENE LARSON, JEANNE SHILTS, and GL REHABILITATION SERVICES, LTD., an Illinois corporation,<br><br>      Defendants. | Case No.: 08 C 1373<br><br>Honorable Judge Joan B. Gottschall |

### REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND

Plaintiff, CAROL M. GORDON, by her attorneys, Gregg Minkow and Max Kanter of Hinshaw & Culbertson LLP, reply as follows to the Response of the Defendants, ILENE LARSON, JEANNE SHILTS, and GL REHABILITATION SERVICES, LTD., to the Motion filed by Plaintiff seeking remand of this matter to the Circuit Court:

### SUMMARY OF REPLY

The Defendants, in their Response to Plaintiff's Motion for Remand, allege that the Plaintiff joined GL Rehabilitation as a defendant solely to defeat federal jurisdiction. Defendants variously refer to this as a "sham," a "façade," and of "playing a game." What the Defendants fail to do, however, is articulate any reason why the Plaintiff would go out of her way to avoid jurisdiction in the federal court. Plaintiff's attorneys regularly appear before this Court, and the Plaintiff's only motive for filing in the state court, and seeking a remand now, is the obvious one: to resolve the present controversy as to all affected parties, and to avoid proceeding in a court that lacks subject matter jurisdiction.

In the end, the Defendants' Response fails to address most of the points made in the Motion for Remand, and instead subtly asks the Court to decide the merits of the case in order to

find that GL Rehabilitation should not be joined as a defendant. This ignores the legal principle (cited in the Motion for Remand) that the Court must accept as true the allegations of the Complaint as filed in the state court. By repeatedly referring to the "plain language" of the parties' documents, the Defendants ignore the numerous factual questions which are *not* resolved by that plain language, and which a court hearing the merits of this case must determine. The Defendants' arguments also remain self-contradictory, as they were in the Notice of Removal, and as the Plaintiff pointed out in her Motion for Remand.

Each of these points will be explained in greater detail below, and on the basis thereof, the Court should remand this case to the Cook County Circuit Court, which does have the requisite subject matter jurisdiction.

**I.     DEFENDANTS' ACKNOWLEDGEMENT THAT GL REHABILITATION IS A THIRD PARTY BENEFICIARY OF THE RELEASE AT ISSUE UNDERMINES THEIR ARGUMENT FOR REMOVAL TO THE FEDERAL COURT.**

The Defendants admit that GL Rehabilitation is a third party beneficiary of the Release which the Plaintiff seeks to rescind under Count II of her Complaint. Having said that, the Defendants fail to explain how any finding of rescission, in a case to which GL Rehabilitation is not a party, could have extinguished GL Rehabilitation's rights under the Release.

Indeed, the law is well established to the contrary. That is, when parties to a contract enter into a second contract, which purports to rescind the earlier agreement, that rescission is ineffective as to a third party beneficiary under the original agreement. See *Hume v. Brower*, 25 Ill.App. 130, 1887 WL 5747, at *2-3 (3d Dist. 1886) (copy attached). This principle was reiterated more recently in *Hickox v. Bell*, 195 Ill.App.3d 976 (5th Dist. 1990) (copy attached), which stated that a "creditor beneficiary" – namely, a third party beneficiary whose "pre-existing duty or liability is contractually transferred to a new party" – acquires vested rights in the contract "as soon as the contract is executed." 195 Ill.App.3d, at 993-4. Consequently, in

*Hickox*, where (i) a bank had agreed to take over a debt owed by another, (ii) the original obligor on the debt was a third party beneficiary, and (iii) the signers of the original agreement agreed to rescind it in favor of a new agreement, the Appellate Court reversed the trial court's dismissal of the bank as a defendant when sued by the third party creditor beneficiary, stating that the rescission by the signers did not terminate the rights of the third party. *Id.*, at 195 Ill.App.3d 983-4.

GL Rehabilitation appears to be a "creditor beneficiary" within the meaning of *Hickox*, since the sale agreement at issue shifted responsibility for certain of GL Rehabilitation's preexisting corporate debts to the Plaintiff (subject to the limiting conditions of the agreement itself). The principles of *Hume* and *Hickox* appear to protect the rights of such a third party beneficiary *regardless* of whether the rescission is one made voluntarily by the signers of the agreement, or one imposed by a court in litigation between the signers where the third party beneficiary is not joined as a party. While Plaintiff agrees with the Defendants that, if grounds exist for the invalidity of the Release, the rights of GL Rehabilitation under that Release *should* fall along with those of the individual Defendants, the above-cited authorities suggest that, at least, GL Rehabilitation would be entitled to representation and argument on its own behalf before its rights as a "releasee" could be affected. That is why GL Rehabilitation is both a proper and necessary party to Count II of the Complaint, seeking to rescind the Release as to GL Rehabilitation as well as Defendants Larson and Shilts.

The Defendants misconstrue Plaintiff's contention that rescission of the Release (or at least a declaration that it is unenforceable) is appropriate, in part, due to lack of consideration. The Defendants argue, at pp. 4-5 of their Response, that the release of GL Rehabilitation need not be supported by consideration beyond the consideration that went to the signers of the

contract to which GL Rehabilitation is a third party beneficiary. That, however, is not the challenge which the Plaintiff has made. Rather, as stated on p. 8 of the Motion for Remand, Plaintiff contends that the Release fails due to lack of consideration from the signers themselves. As the Motion points out (still at p. 8), the Release was sprung on the Plaintiff at the closing, and was contrary to ¶ 15 of the parties' actual sale agreement, which provided for the survival of warranties and representations after closing. Plaintiff alleges that the Defendants gave nothing in return for a Release which on its face may not incorporate the limiting conditions imposed by ¶ 15 of the sale agreement which spawned it; in turn, merely going through with the closing, as the individual Defendants were already obligated to do under the sale contact, does not comprise consideration at all under the "preexisting duty rule" for which Plaintiff cited the *Gavery* case.[1]

Defendants try to distinguish *Gavery,* but do so in relation to matters other than the "preexisting duty rule" for which it is cited by the Plaintiff. The fundamental legal principle for which *Gavery* is cited – that a release must be based upon consideration beyond what a party is already legally obligated to do – is sound law. The facts here, as alleged in the Complaint, must be taken as true for purposes of the Motion for Remand. *McElroy v. SOS International, Inc.,* 730 F.Supp. 803, 806 (N.D. Ill., 1989); *Keenan v. Unum Provident Corp.*, 252 F.Supp.2d 163, 166

---

[1] A court would have to consider parol evidence in connection with the rescission action. See Motion for Remand, at ¶ 24. However, rescission may not be the only means for Plaintiff to obtain relief with respect to the Release. A court hearing the merits of the case may determine that an ambiguity exists, and then consider parol evidence in order to resolve any conflict between the sale agreement (insofar as warranties survive closing, under ¶ 15) and the Release. See *Pepper Construction Co. v. Transcontinental Insurance Co.,* 285 Ill.App.3d 573, 576, 673 N.E.2d 1128, 1130, 220 Ill.Dec. 707 (1st Dist. 1996) (copy attached). Alternatively, it may have to reconcile the language of the sale agreement and the Release in an effort to make them consistent. See *Calumet Construction Corp. v. Metropolitan Sanitary Dist. of Greater Chicago,* 222 Ill.App.3d 374, 378, 581 N.E.2d 206, 209, 163 Ill.Dec. 255 (1st Dist. 1991) (copy attached). Either way, these are issues that go to the merits and are for a court with proper jurisdiction to decide at trial; unless there is "no reasonable possibility" that those issues could be decided in a way adverse to GL Rehabilitation – which Defendants have not shown – the appropriate court to decide these issues is the state court

(E.D. Pa. 2003). Under those facts, none of the Defendants gave any consideration for a Release which might be read to waive the continuing post-closing warranty obligations imposed by ¶ 15 of the parties' sale agreement.

Defendants suggest that *Gavery* would require rejection of Plaintiff's rescission claim on the merits, arguing that the *Gavery* court rejected a claim under circumstances similar to those here. See Response, at p. 4. However, *Gavery* itself reveals the reasons why its ultimate finding is distinguishable from the present case.

In *Gavery* (copy attached), the driving issue was whether the release was ambiguous or too general, and the court found that in light of the numerous recitals contained in the body of the release, there was no ambiguity, and no basis to find it inapplicable to the claim that the plaintiff belatedly wanted to assert. 283 Ill. App. 3d 484, at 488. The court explicitly distinguished the *Carlile* case, attached hereto and previously cited by Plaintiff (at p. 7 of the Motion for Remand), since (i) the release in *Carlile* was far more general and contained no recitals setting forth the facts on which it was based, and (ii) in *Carlile,* unlike *Gavery*, there were allegations that the release was obtained thru fraud. *Gavery, Id.*

The present case is almost identical to *Carlile,* and not at all like *Gavery* with respect to facts allowing or barring either rescission or the consideration of parol evidence. Here, the Complaint alleges that the individual Defendants defrauded the Plaintiff, by creating, and failing to disclose before the closing, certain debts on the part of GL Rehabilitation, in their roles as corporate employees. This is alleged to have been contrary to express written representations and warranties which those Defendants made in ¶14 of the sale agreement. See Complaint (Ex. A to Motion for Remand), at ¶¶ 23-33, 36-39, and 51-54. The Release (Ex. B to the Complaint), like the release in *Carlile*, is short, broad, and barebones. As the court stated in *Carlile*:

5

> "Where there are words of general release in addition to recitals of specific claims, the words of general release are limited to the particular claim to which reference is made. ( *Carona,* 203 Ill.App.3d at 951, 148 Ill.Dec. at 936, 561 N.E.2d at 242.) Where there are only words of general release, the courts will restrict the release to the thing or things intended to be released and will refuse to interpret generalities so as to defeat a valid claim not then in the minds of the parties. ( *Gladinus v. Laughlin* (1977), 51 Ill.App.3d 694, 696, 9 Ill.Dec. 173, 175, 366 N.E.2d 430, 432; *Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill.App.3d 294, 304, 92 Ill.Dec. 110, 116, 484 N.E.2d 841, 847.) A general release is inapplicable to an unknown claim. *Farm Credit Bank v. Whitlock* (1991), 144 Ill.2d 440, 448, 163 Ill.Dec. 510, 513, 581 N.E.2d 664, 667.
>
> *Even where the parties intend to release a specific claim, the release of that claim will not be enforced if there has been fraud, duress, mutual mistake, or, at least in some cases, unconscionability*."

271 Ill. App. 3d 833, at 839 (emphasis added). Here, all the elements for a rescission under *Carlile* (even as interpreted by *Gavery*) are alleged. The Plaintiff here asserts claim which was unknown at the time of the Release; the claim is for improper expenditures which the individual Defendants hid through fraudulent misrepresentations (in writing) as to the absence of those improper expenditures and the resulting corporate debts; and there is a broad and arguably general release which is at odds with the parties' written contract, and therefore (it is asserted) not intended to waive claims based upon expenses Plaintiff might face solely as a result of the fraud alleged in the Complaint.

Plaintiff's claim for rescission in this case is supported by the unopposed Affidavit of the Plaintiff (Ex. D to the Motion for Remand). Further, at p. 4 of their Response, the Defendants merely deny, in a single conclusory sentence, that a fraud occurred; they do not dispute Plaintiff's argument and cited authority – at p. 7, ¶ 24 of the Motion for Remand – that if a fraud occurred as alleged in the Complaint, the Plaintiff would legally be entitled to rescission of the Release.

The Defendants claim it does not matter whether GL Rehabilitation is released because there is no potential monetary judgment that Plaintiff could obtain against that corporation, even if the Release is rescinded. In stating this, however, the Defendants ignore entirely the fact that the parties' sale agreement provided for Plaintiff to receive any net positive cash balance remaining in the corporate bank accounts at the time of closing, even if that meant recovering from post-closing deposits into those accounts.

Indeed, the contract is explicit about Plaintiff's right to such funds. Paragraph 4(c) of the Stock Purchase Agreement (sometimes referred to herein as the parties' "sale agreement"), under "Assets To Be Distributed To Seller," states:

> "It is understood and agreed to by and between the parties that [certain] assets are instead to be distributed by the Corporation to the Seller, effective as of December 31, 2007:
>
> * * *
>
> C. The sum total of cash in any and all of Corporation's checking and/or savings accounts, including those at Chase Bank, and Mount Prospect National Bank, but not the sum equal to any issued but outstanding checks as of the Closing Date."

Paragraph 8 of the Agreement, under "Accounts Receivable," states further, in relevant part:

> "All of the Corporation's accounts receivable collected and received subsequent to the Closing Date *other than as set forth in paragraph 4* shall belong to the Corporation to be utilized by Buyers for the Corporation's post-closing obligations and liabilities." (Emphasis added.)

Thus, the parties' agreement explicitly provides for a claw back of funds from the corporate accounts, after closing, if cash to which Plaintiff was entitled at closing was not passed to her.

The Complaint alleges that Defendants Larson and Shilts fraudulently depleted the corporate bank accounts prior to closing. Among other things, Plaintiff alleges that by using her credit card signing privileges and her ability to adjust payroll (which is paid from the corporate

7

bank accounts), Defendant Larson, as a corporate employee, used funds that should have gone to Plaintiff under ¶¶ 4 and 8 of the sale agreement to be used, instead, for improper expenditures benefitting Larson and Shilts or which were otherwise improper. See e.g., Complaint (Ex. A to the Motion for Remand), at ¶¶ 20-28 and 51-54.[2] As the company has continued to operate after the closing, cash which should have gone to the Plaintiff at closing – but for the conduct by Larson which is alleged to have been fraudulent and in breach of warranties and fiduciary duties – has undoubtedly been repatriated to the corporate accounts through subsequent deposits by Larson and Shilts.

Plaintiff is entitled to recoup these funds, to the extent of any fraud that Larson committed, under the language of ¶¶ 4 and 8 of the sale agreement (quoted above). Further, any debts of the corporation created by the fraudulent conduct of Larson or Shilts, in their capacity as employees of GL Rehabilitation, would not be owed by Plaintiff, in spite of the language of the sale agreement allocating certain pre-closing debts to the Plaintiff more generally. A judgment could surely be entered against GL Rehabilitation either for monetary damages owed to Plaintiff because funds should have been paid at closing, or for a declaration that certain of GL Rehabilitation's debts are not owed by Plaintiff, under the allegations of the Complaint. That, of course, is the declaration sought in Count I of the Complaint (see Ex. A to Motion for Remand, at p. 11 thereof (prayer for relief)).

If the Release is not rescinded in a proceeding that is binding upon GL Rehabilitation, and if Larson individually is unable to satisfy a judgment under Count III of the Complaint for fraudulently depleting the corporate bank accounts, then how does the Plaintiff get relief from debts of the corporation fraudulently created by Larson but purportedly assigned to Plaintiff

---

[2]  See Motion for Remand, at pp. 6-7, ¶¶ 20-22, and the references there to various paragraphs and exhibits of the Complaint.

under the sale agreement? Further, the Plaintiff's right to recover actual cash from the accounts of GL Rehabilitation, in the amount that should have been distributed to the Plaintiff at closing, is jeopardized.

Even though the alleged frauds by Larson may have predated Larson becoming an *owner* of GL Rehabilitation, they certainly did not predate her status as an employee who was able to carry out the fraud solely because of her access to funds in the corporate bank accounts prior to closing. Complaint, ¶¶ 8 and 20. Consequently, contrary to Defendants' arguments on p. 6 of their Response, recovery against GL Rehabilitation for the fraudulent siphoning of funds by Larson clearly *would* lie on the basis of *respondeat superior*.

The whole point of the present action is to determine the accounts between and among the parties. However, it is primarily the accounts of GL Rehabilitation that are involved here. That is clear from the face of both the state court Complaint filed by the Plaintiff, and the parties' sale agreement which is at the heart of the controversy. While the exact amount that may be recoverable from GL Rehabilitation or the individual Defendants (by way of cash or setoff) is not yet known with certainty, it also cannot clearly be said at this point that there is "no reasonable possibility" of a judgment against GL Rehabilitation once the Release is rescinded, either directly from the GL Rehabilitation corporate bank accounts (pursuant to ¶¶ 4 and 8 of the sale agreement), or from GL Rehabilitation's assets generally by reason of misconduct by its agent prior to closing. Defendants' own cited authorities state that the joinder of a party is *not* a fraudulent attempt to defeat diversity jurisdiction *unless* there is "no reasonable possibility that a state court would rule" against the non-diverse defendant (in this case, GL Rehabilitation). See Response, at pp. 2-3. Under the allegations of the Complaint which must be taken as true – and without holding an evidentiary hearing and in effect deciding the merits – the Court is not in a

position to conclude that the Defendants' burden for obtaining removal, as articulated by the Defendants themselves, can be met. The Court must take the allegations of the Complaint as true, and those allegations indicate (at ¶ 57 of the Complaint) that at least $27,000.00 is owed to the Plaintiff by reason of Larson's improper expenditures that may have to be recovered from GL Rehabilitation, and determination of those rights requires that GL Rehabilitation be a party. The joining of GL Rehabilitation is not fraudulent, and the Motion for Remand must be granted.

**II.    GL REHABILITATION IS ALSO A PROPER PARTY BECAUSE OF THE CLAIMS THAT CORPORATION MIGHT ASSERT FOR PLAINTIFF TO PAY ITS DEBTS, CLAIMS WHICH THE PLAINTIFF SEEKS TO HAVE DETERMINED IN COUNT I OF HER COMPLAINT SEEKING DECLARATORY JUDGMENT.**

As the Defendants point out in their Response, there are important provisions of the parties' Stock Purchase Agreement which call for an allocation of the expenses of GL Rehabilitation between the Plaintiff and the individual Defendants. See Response, at p. 3. As the Defendants also acknowledge, Count I of the Plaintiff's Complaint in the state court seeks a declaration as to which of the corporate obligations of GL Rehabilitation are the Plaintiff's responsibility. *Id.*

Interestingly, the Defendants do not argue that GL Rehabilitation is not a third party beneficiary entitled to enforce whatever obligations were shifted to the Plaintiff with respect to paying GL Rehabilitation's debts. The authorities cited above hold that a third party beneficiary has the right to enforce an agreement on its own behalf. *Hume, Id.*, at *2 ("It has long been settled that a third party may sue on a simple contract entered into by others for his benefit"). Thus, it is specious for the Defendants to argue, without citing any supporting authority, that GL Rehabilitation is precluded from bringing a claim against the Plaintiff for unpaid debts purportedly shifted to Plaintiff if it is not included in, and bound by, any declaratory judgment entered in Plaintiff's favor on Count I of the Complaint.

### III. DEFENDANTS' ARGUMENTS CONCERNING COUNT IV OF THE COMPLAINT, SOUNDING IN CONVERSION, ARE INACCURATE BUT PROBABLY MOOT

Paragraph 4 of the parties' sale agreement did not have to list the "Game Ready" equipment as an asset excluded from the sale in order for it to belong to the Plaintiff, requiring its return.  Paragraph 4 begins, "Buyers shall not be entitled to acquire the following *corporate assets*" (emphasis added); thus, if the Game Ready was property of the Plaintiff personally, and never was a "corporate asset" to begin with (as alleged in the Complaint, at ¶ 59), then it should have been returned to Plaintiff in response to her first three written demands as alleged in ¶ 60 of the Complaint.  The mere fact that this "loaned" equipment was on the premises at the time of closing did not convert it to a "corporate asset" that GL Rehabilitation could retain.

In any event, the Defendants, after initially ignoring demands for the return of the Game Ready equipment, have, subsequent to the filing of the Complaint, agreed to return it, and the Plaintiff agrees to accept the return.  Consequently, the controversy set forth in Count IV, at least with respect to the return of the equipment, has been rendered moot.

Interestingly, however, in the first paragraph on p. 7 of the Response, the Defendants assert – as they did in their Notice of Removal – that the Release which is the subject of Count II of the Complaint would have barred any claim for return of the equipment in any event.  As pointed out in the Motion for Remand, the Defendants themselves leave no doubt that the existence of the Release in favor of GL Rehabilitation, which (as noted above) can only be rescinded in a proceeding to which GL Rehabilitation is a party, places GL Rehabilitation knee deep in the relations among the other parties to this lawsuit on matters that go beyond the Game Ready, most notably determination of what debts of GL Rehabilitation the Plaintiff may be liable for, and what monies GL Rehabilitation may owe to Plaintiff, all of which may hinge on rescission or interpretation of the Release.

11

## IV. THE STANDARDS FOR AWARDING ATTORNEYS' FEES IN CONNECTION WITH THE MOTION FOR REMAND HAVE BEEN MET.

Defendants urge the Court not to award attorneys' fees if the Motion for Remand is granted, on grounds that they advanced an "objectively reasonable basis for seeking removal." The Plaintiff respectfully disagrees. The Defendants have repeatedly asserted rights which GL Rehabilitation was given under the Release, while arguing at the same time that GL Rehabilitation need not be a party to any action seeking rescission of that Release. The Defendants cited no authority in support of their argument that GL Rehabilitation, as a third party beneficiary, was not required to be named as a party in order for it to be bound by any rescission judgment or any decision interpreting the Release. The Defendants repeatedly argued the merits of the case rather than the jurisdictional issues. The Defendants ignored whole portions of the sale agreement, the Complaint, and even the Motion for Remand, which made it clear that the Plaintiff has rights in the corporate bank accounts of GL Rehabilitation if monies that should have been distributed to the Plaintiff under ¶¶ 4 and 8 of the Agreement were instead depleted before closing and repatriated to the accounts later.

In the end, the following, single sentence at the top of p. 3 of the Response summarizes the Defendants' argument:

> "The allegations in Counts I, II, and III are directed at Defendants Larson and Shilts as buyers under the Agreement."

Even a cursory reading of Counts I and II show that they are in fact directed against GL Rehabilitation as well, and the Defendants have asked the Court to simply ignore this undeniable fact.

Plaintiff warned Defendants that any attempted removal would be specious (see correspondence attached as Ex. E to the Motion for Remand), and the Defendants proceeded down that path anyway. This is most assuredly a case where an award of attorneys' fees is

12

appropriate, because of the needless inconvenience and expense to which the Defendants have put the Plaintiff, after being warned and then failing to provide authorities to support their position.

WHEREFORE, the Motion for Remand should be granted, along with an award of attorneys' fees pursuant to a statement of fees and costs to be provided in a subsequent fee petition.  (See *Wisconsin v. Hotline Industries, Inc,* 236 F.3d 363, 365 (7th Cir. 2000) and *Stallworth v. Greater Cleveland Regional Transit Authority*, 105 F.3d 252, 255-257 (6th Cir. 1997), cited by the Seventh Circuit in *Hotline Industries*, holding that the District Court retains jurisdiction to consider an award of fees even after remanding the case to the state court for determination of the merits.)

June 20, 2008                                                CAROL M. GORDON, Plaintiff


                                                                    By:  s/ Gregg I. Minkow
                                                                            One of her Attorneys


Gregg Minkow
Max Kanter
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
ARDC No.: 6181058
E-mail:  gminkow@hinshawlaw.com
E-mail:  mkanter@hinshawlaw.com

6331414v4 885509